*575 OPINION OF THE COURT
Paula J. Omansky, J.
In this action for declaratory relief concerning the interpretation of a commercial lease, defendant Omnicom Group Inc. moves, pursuant to CPLR 3212, to dismiss the complaint and for an award of damages equal to the amount of rent it allegedly overpaid to plaintiff Sage Realty Corporation, as the agent for Madison Avenue Leasehold L. L. C. (Sage Realty).
Plaintiff cross-moves for summary judgment on its claim that it has properly set the wage rate and rent adjustments under section 22.01 of the lease, and that it properly determined defendant’s share of the building’s employee vacation costs and other benefits. In addition, plaintiff cross-moves for a declaration that defendant did not overpay its rent under its lease.
FACTS
Defendant, a multimillion dollar advertizing company, is a commercial tenant in a building located at 435 Madison Avenue in Manhattan. On June 19, 1975, Sage Realty’s predecessors-in-interest, William Kaufman and J. D. Weiler (nonparties), and defendant (then known as Doyle Dane Bernbach Inc.), entered into a lease. Under the lease, there are several components to defendant’s obligation to pay rent. These include a duty to pay a fixed minimum rent, as well as an obligation to pay items denominated as “additional rent” and “adjustment of rent.” According to defendant, the lease and subsequent amendments provide that the rent goes up one penny for each penny the minimum porters’ wage rate increases.
At issue in this application is a specific component of additional rent set forth in section 22.01 of the lease, in a provision commonly known in the commercial real estate industry as a “porters’ wage rate escalation clause.” Section 22.01 provides that
“[i]n addition to the fixed minimum rent herein before reserved, Tenant covenants and agrees to pay to Landlord as additional rental, sums computed in accordance with the following provisions:
“(a) ‘Wage Rate’ shall mean the minimum regular hourly wage rate plus all other sums required to be paid to or for the benefit of porters engaged in the general maintenance and operation of office buildings of the type and in the vicinity of *576 the Building pursuant to a collective bargaining agreement between Realty Advisory Board on Labor Relations, Inc. (or any successor thereto) and Local 32B of the Service Employees International Union, AFL-CIO (or any successor thereto). The Wage Rate shall include but not be limited to sums paid for pensions, welfare funds, vacations, bonuses, social security, unemployment, disability benefits, health, life, accident and other type [sz'c] of insurance. The Wage Rate is intended to be an index in the nature of a cost of living index, and is not intended to reflect the actual costs of wages or expenses for the Building.”
In the original lease, the base wage rate meant the “Wage Rate in effect on January 1, 1976” (lease § 22.01 [b]). Furthermore, in the event that the original wage rate were to be changed during the term of the lease to an amount greater than the base wage rate, the tenant was obligated to pay to the landlord an increased amount based on a formula. The lease makes no provision for the event that a lower-pay category is adopted by the union.
At the time that the parties entered into the lease in 1975, the union contract had only one base wage rate, called the “minimum regular hourly wage rate,” for each category of employee. However, on February 4, 1996, a new collective bargaining agreement (the 1996 Commercial Building Union Agreement) was negotiated between Local 32B-32J, Service Employees International Union, AFL-CIO, and the Realty Advisory Board on Labor Relations, Inc. (Realty Advisory Board), a trade organization made up of building owners.
The 1996 Commercial Building Union Agreement required that new hires in either the guard or other category be paid at a starting rate of 80% of the “minimum regular hourly wage rate.” Upon completion of 30 months of employment, the new employees would be paid the full minimum wage rate. Overtime at the rate of time and one half the regular straight-time hourly rate was to be paid for all hours worked in excess of 8 hours per day or 40 hours per week.
In October 1998, defendant alleges that it discovered that plaintiff was continuing to compute “additional rent” based on the minimum regular hourly rate for experienced employees, and not the lower rate for new hires. Defendant contends that the lower rate paid to new employees is the new base minimum regular hourly rate and should be used to compute additional rent. In a letter dated October 13, 1998, DBO Seidman, L. L. P., acting on behalf of defendant, notified plaintiff *577 of this discrepancy and complained that, based on the “new hire” provision in the 1996 Commercial Building Union Agreement, the landlord was overcharging it. In addition, defendant also complained that 10 days of vacation time, and not 15, have been included in the determination of the “wage rate” and that other purported errors were made in determining vacation time. Plaintiff declined to make any adjustment and this declaratory judgment action followed.
DISCUSSION
In this case, defendant argues that the phrase “minimum regular hourly wage rate” is not defined in the lease; that the words must be given their plain meaning (see, Matter of Wallace v 600 Partners Co., 205 AD2d 202 [1st Dept 1994], affd 86 NY2d 543 [1995]); that any ambiguity in the phrase must be construed against the landlord (see, Jacobson v Sassower, 66 NY2d 991 [1985]). Defendant points out that when the parties entered into the lease, there was no rate for full-time porters that was lower than the “minimum regular hourly rate.” Defendant concludes that the lease term means the lowest possible regular hourly wage that can be paid to a union porter; that when the 1996 Commercial Building Union Agreement provided that certain full-time employees were to be paid 20% less than other full-time employees, the “new hire” rate, that rate became the lowest rate paid to full-time employees, and is therefore the “minimum regular hourly wage rate” paid to porters. Defendant contends that in refusing to adjust the basis of the calculation for the additional rent to the “new hire” rate, the landlord has impermissibly created a two-tier system in violation of the lease between the porters, one for experienced employees, and one for new hires; and is reaping a windfall because it is charging a higher rate of additional rent despite the fact that its obligation to pay building staff is set at a lower rate. According to defendant, plaintiff was aware of this potential windfall when it negotiated the lease.
Section 22.01 of the lease between the parties defines “wage rate” by reference to the collective bargaining agreement between the Union, Local 32B-32J, and the Realty Advisory Board. However, the lease terms are not locked into the rates set by the January 1, 1976 agreement, and nothing prevented the parties to the 1996 collective bargaining agreement from engrafting permutations based on the “regular” wage rate paid to porters. In the 1996 Commercial Building Union Agreement, “regular pay” is in the nature of a category of pay differenti *578 ated from other rates of pay. Thus, overtime pay is set at time and one half of the “regular” straight-time pay. Similarly, the new hire rate is not the “regular” rate; as described in the 1996 Commercial Building Union Agreement it is a percentage of the “regular” straight-time pay. Therefore, the new hire rate constitutes a category of pay based on, but separate from, the “regular” rate.
Lending support to its interpretation that the new hire rate is not the regular rate are the practicalities pointed out by plaintiff, namely that only 3% of the full-time, permanent porters within Local 32B-32J earn the new hire rate set forth in the 1996 Commercial Building Union Agreement; that there is a less than 5% turnover rate for permanent jobs; and that the new hire rate is applicable for only the first 30 months of employment, at most. Plaintiff properly used the “regular” wage rate in computing additional rent, rather than the “new hire” rate.
The court rejects defendant’s contention that plaintiff is the beneficiary of an improper windfall (cf., Fairfax Co. v Whelan Drug Co., 105 AD2d 647 [1st Dept 1984]). The parties’ lease follows the base-year approach commonly used in commercial leases (see, Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 217 [1978]). Section 22.01 (b) of the lease sets the minimum wage rate charged on January 1, 1976 as a threshold amount for additional rent, and the remainder of section 22.01 of the lease outlines how to compute additional rent after 1976 in the event that the regular pay rate increases. There is no provision for decreases in labor costs in the lease, which would be the effect of defendant’s interpretation, whereby the minimum regular hourly rate for 1996, 1997 and 1998 would be 13% to 18% lower than the 1995 minimum regular hourly rate, this at a time when the consumer price index had risen steadily during that period by 7% according to plaintiff.
In addition, there is no requirement in this State that escalation clauses in commercial leases be tied to actual costs (Backer Mgt. Corp. v Acme Quilting Co., supra, 46 NY2d, at 218). On the contrary, “the indexing of rent or wage increases to outside factors, such as, for instance, the cost of living index, which may or may not directly affect particular parties, is common place” (supra, at 218). The fact that the landlord may have written a provision which insulates it from the effects of rising costs is not sufficient, by itself, to invalidate the lease provisions (supra).
Defendant’s conspiracy arguments also fail, since it was not foreseeable in 1975 that the market situation would change to *579 the extent that the porters’ union was willing, in 1996, to permit recently hired employees to start at a lower wage rate. Defendant made no provision for any decrease in additional rent in the event that the landlord’s building expenses decreased.
The record does not support any claim of fraud or mistake. Here, defendant tenant was well aware that the wage rate escalation provision might be potentially disadvantageous to its interests (Backer Mgt. Corp. v Acme Quilting Co., supra, at 220). Furthermore, defendant knew from the inception of the tenancy that its rate of payment would be based on the terms of future union contracts over which it had no control.
Contrary to defendant’s arguments, the doctrine of frustration of performance is not applicable to this situation. In New York, “frustration of purpose refers to la situation where an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract, even though performance is possible, thus operating to discharge a party’s duties of performance” (Matter of Fontana D’Oro Foods, 122 Misc 2d 1091, 1096 [Sup Ct, Richmond County 1983], mod on other grounds 107 AD2d 808 [2d Dept], affd 65 NY2d 886 [1985]; see, Pettinelli Elec. Co. v Board of Educ., 56 AD2d 520, 521 [1st Dept], affd 43 NY2d 760 [1977]). Under the present fact pattern, a diminution of wage rates does not destroy the underlying basis of the contract which was to rent commercial space (cf., Farlou Realty Corp. v Woodsam Assocs., 294 NY 846 [1945]; 2814 Food Corp. v Hub Bar Bldg. Corp., 59 Misc 2d 80, 85 [Sup Ct, NY County 1969]).
Therefore, defendant’s motion for summary judgment and an award of damages is denied. Plaintiffs cross motion is granted to the extent that the landlord is not obligated to compute rent based on the new hire rate. However, since the plaintiff has failed to present any evidence explaining how it computed defendant’s additional rent costs, including defendant’s alleged responsibility to pay the building’s employee benefits, this court is unable to determine whether the plaintiff landlord properly computed the defendant’s costs for the time period which is the subject of this action (Schroder Bank & Trust Co. v South Ferry Bldg. Co., 99 AD2d 736 [1st Dept 1984]). Therefore, the remainder of the cross motion is denied.
Accordingly, it is ordered that defendant’s motion for summary judgment is denied; and it is further ordered that plaintiffs cross motion is granted to the extent that this court finds that section 22.01 of the lease does not obligate the *580 plaintiff to compute defendant’s additional rent based on the new hire rate found in the 1996 Commercial Building Union Agreement; and it is further ordered that the remainder of plaintiffs cross motion is denied.